IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY R. GARCIA,<br><br>    Plaintiff,<br><br>  v.<br><br>RICHARD KIRKLAND, et al.,<br><br>    Defendants<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. C 05-0341 MMC (PR)<br><br>**ORDER OF PARTIAL DISMISSAL AND OF SERVICE; DIRECTING DEFENDANTS TO FILE DISPOSITIVE MOTION OR INDICATE THAT SUCH MOTION IS NOT WARRANTED**<br><br>**(Docket No. 5)** |

    Plaintiff, proceeding pro se and currently incarcerated at Pelican Bay State Prison ("PBSP"), filed the above-titled civil rights action under 42 U.S.C. § 1983. In a separate order filed concurrently herewith, plaintiff has been granted leave to proceed in forma pauperis.

**BACKGROUND**

    Plaintiff alleges the following facts in his complaint:

    In 1994, while incarcerated at New Folsom State Prison, he was issued a form CDC-114 directing that he be placed in administrative segregation indefinitely because he had been identified by three different confidential informants as a member of the "Northern Structure" prison gang. As such, plaintiff's presence in the general prison population was deemed a threat to the institution. In October 1994, plaintiff was transferred to administrative segregation in the Secure Housing Unit ("SHU") at PBSP, where he has remained ever since.

    According to plaintiff, in May 2004, he was eligible for "inactive review," i.e., a review by prison officials of whether he had been inactive in a gang for six years, pursuant to prison

regulations requiring his release from administrative segregation if he had not been active in a gang for a period of six years. Plaintiff did not receive inactive review in May 2004. The issue, however, was addressed thereafter at a hearing in July 2004,[1] at which plaintiff was informed he would not be eligible for inactive review until November 2007. This decision was based on the fact that defendant M. Randolph, Sergeant at PBSP and Institution Gang Investigator ("Randolph"), had found a memorandum indicating that on November 28, 2001, a confidential informant had informed prison authorities that plaintiff had been involved in gang activity.[2] Defendant M. Castellaw, Associate Warden, was present at the hearing and reviewed the memorandum.

Plaintiff asked for, and received, a copy of the memorandum. He discovered that it did not indicate any new information regarding plaintiff's gang activity, but instead was simply an updated notation of the fact that plaintiff had previously been identified by a source in May 1998. When plaintiff complained to prison officials, defendant Richard Kirkland, Warden PBSP ("Kirkland"), agreed with plaintiff that he was eligible for inactive review. In October 2004, based on information found in the course of that review, plaintiff was denied inactive status. Specifically, investigators informed plaintiff that a gang "roster" had been found in the cell of a Northern Structure gang member, which document included plaintiff's name.

Plaintiff claims he has never been a gang member or engaged in gang activity. He claims his continued retention in the SHU is a violation of his constitutional rights. Plaintiff alleges that these violations were caused by, inter alia, Kirkland's failure to properly administer prison regulations, and his failure to adequately train and supervise PBSP employees.

**DISCUSSION**

A.  Standard of Review

---

[1] Plaintiff does not specify the nature of this hearing.

[2] According to plaintiff, the six-year period starts to run on the last date prison officials receive information of an inmate's gang activity.

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

B.   Legal Claims

   1.   Due Process

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Changes in conditions of confinement may amount to a deprivation of a constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance," Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995),[3] and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484. Indefinite placement in the SHU may amount to a deprivation of a liberty interest of real substance within the meaning of Sandin, i.e., an "atypical and significant hardship." See Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 (2005).

When prison officials determine that a prisoner is to be segregated for administrative

---

[3] "The Constitution itself, however, does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," id. at 2393, nor is the Eighth Amendment implicated thereby, see Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (finding indefinite administrative segregation is not cruel and unusual punishment). Accordingly, plaintiff's claims based on these constitutional provisions are hereby DISMISSED.

3

reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. See Toussaint v. McCarthy, 801 F.2d at 1100; see also Wilkinson, 125 S. Ct. at 2397 (determining prisoner constitutionally entitled only to informal, non-adversary procedures prior to assignment to "supermax" facility).

Due process also requires that an evidentiary basis exist for a prison official's decision to place an inmate in segregation for administrative reasons. See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal can be deduced. Id. at 1105. Additionally, it has been held that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); see also Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (noting results of polygraph examination may not be considered "unfailingly accurate" when used as evidence to support placement in administrative segregation); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (holding evidence relied upon by prison disciplinary board must have "some indicia of reliability"). Finally, prison officials must engage in some sort of periodic review of an inmate's confinement in administrative segregation, see Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983); Toussaint, 801 F.2d at 1101, which review must amount to more than "meaningless gestures." Toussaint v. Rowland, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989) (citing Toussaint v. McCarthy, 801 F.2d at 1102).

Here, plaintiff alleges the evidence relied upon by prison officials in determining he was not eligible for release from the SHU in July 2004 and again in October 2004 was neither sufficient nor reliable. He alleges that defendants Randolph and Castellaw were responsible for the erroneous decision in July 2004, and that two Doe defendants were responsible for the erroneous decision in October 2004. Plaintiff also claims he was not provided all the procedures required by due process in connection with the decision to hold him in the SHU

4

indefinitely. Liberally construed, these allegations state cognizable due process claims.

### 2. Double Jeopardy

Plaintiff further claims the decision in October 2004 not to release him from the SHU, in combination with the initial decision to place him in the SHU in 1994, violates the Double Jeopardy Clause. The guarantee against double jeopardy protects against a second prosecution for the same offense after a prior acquittal or conviction, and against multiple punishments for the same offense. See Witte v. United States, 515 U.S. 389, 395-96 (1995); United States v. DiFrancesco, 449 U.S. 117, 129 (1980). These protections govern prosecutions and sentences carried out in state and federal court based on criminal charges. This Court is aware of no authority, and plaintiff cites none, for the proposition that the Double Jeopardy protections apply to administrative decisions by prison officials to segregate their inmates, or indeed that these protections apply in any context other than state or federal court. Accordingly, plaintiff's double jeopardy claim is not cognizable and is hereby DISMISSED.

### 3. Retaliation

Plaintiff alleges that the denial of his release from the SHU in 2004 was done in retaliation for his having filed administrative grievances. Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). A prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th

Cir. 1985) (holding allegation that actions were "arbitrary and capricious" sufficient to plead retaliation). The prisoner also must allege that the defendants' actions caused him some injury. Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

Here, plaintiff alleges he was kept in the SHU after his inactive review because he had filed administrative grievances, including grievances based both on the failure to conduct such a review in May 2004, and on the inadequacy of the July 2004 determination that petitioner was still an active gang member. Prisoners may not be retaliated against for exercising their right of access to the courts, which extends to established prison grievance procedures. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Thus, a prisoner may not be retaliated against for using such procedures. See Rhodes, 408 F.3d at 567; Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Accordingly, plaintiff's retaliation claim states a cognizable claim for relief.

## CONCLUSION

For the foregoing reasons,

1. Plaintiff's claims are DISMISSED in part, as described above.

2. The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint, and a copy of this order upon: **Warden Richard Kirkland, Associate Warden M. Castellaw, and Sergeant M. Randolph** at Pelican Bay State Prison. The Clerk shall also serve a copy of this order on **plaintiff** and the **California Attorney General's Office**.

2   In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **sixty (60) days** from the date of this order, defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56, including all of the medical records relating to the allegations in the complaint.

**Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If any defendant is of the opinion that**

6

**this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due**.

All papers filed with the Court shall be promptly served on plaintiff.

b.   Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than **thirty (30) days** from the date defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to a defendant's motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

          c.      Defendant <u>shall</u> file a reply brief no later than **fifteen (15) days** after plaintiff's opposition is filed.

          d.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

    3.      All communications by the plaintiff with the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

    4.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

    5.      It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

    6.      Extensions of time are not favored, though reasonable extensions will be granted. However, any motion for an extension of time must be filed no later than the deadline sought to be extended.

This order terminates Docket No. 5.

IT IS SO ORDERED.

DATED: July 13, 2005

          /s/ Maxine M. Chesney
          MAXINE M. CHESNEY
          United States District Judge