IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHNNY R. GARCIA, | ) | No. C 05-0341 MMC (PR) |
| Plaintiff, | ) | ***AMENDED* ORDER OF PARTIAL DISMISSAL AND OF SERVICE** |
| v. | ) | |
| RICHARD KIRKLAND, et al., | ) | |
| Defendants | ) | |

Plaintiff, proceeding pro se and currently incarcerated at Pelican Bay State Prison ("PBSP"), filed the above-titled civil rights action under 42 U.S.C. § 1983. On July 13, 2005, after reviewing the allegations in the complaint pursuant to 28 U.S.C. § 1915A(a), the Court issued an "Order of Partial Dismissal and of Service." That Order is hereby AMENDED as follows.

**BACKGROUND**

Plaintiff alleges the following facts in his complaint:

In 1994, while incarcerated at New Folsom State Prison, he was issued a form CDC-114 directing that he be placed in administrative segregation indefinitely because he had been identified by three different confidential informants as a member of the "Northern Structure" prison gang. As such, plaintiff's presence in the general prison population was deemed a threat to the institution. In October 1994, plaintiff was transferred to administrative segregation in the Secure Housing Unit ("SHU") at PBSP, where he has remained ever since.

According to plaintiff, in May 2004, he was eligible for "inactive review," i.e., a

review by prison officials of whether he had been inactive in a gang for six years, pursuant to prison regulations requiring his release from administrative segregation if he had not been active in a gang for a period of six years. Plaintiff did not receive inactive review in May 2004. The issue, however, was addressed thereafter at a hearing in July 2004,[1] at which plaintiff was informed he would not be eligible for inactive review until November 2007. This decision was based on the fact that defendant M. Randolph, Sergeant at PBSP and Institution Gang Investigator ("Randolph"), had found a memorandum indicating that on November 28, 2001, a confidential informant had informed prison authorities that plaintiff had been involved in gang activity.[2] Defendant M. Castellaw, Associate Warden ("Castellaw"), was present at the hearing and reviewed the memorandum.

Plaintiff asked for, and received, a copy of the memorandum. He discovered that it did not indicate any new information regarding plaintiff's gang activity, but instead was simply an updated notation of the fact that plaintiff had previously been identified by a source in May 1998. When plaintiff complained to prison officials, defendant Richard Kirkland, Warden PBSP ("Kirkland"), agreed with plaintiff that he was eligible for inactive review. In October 2004, based on information found in the course of that review, plaintiff was denied inactive status. Specifically, investigators informed plaintiff that a gang "roster" had been found in the cell of a Northern Structure gang member, which document included plaintiff's name.

Plaintiff claims he has never been a gang member or engaged in gang activity. He claims his continued retention in the SHU is a violation of his constitutional rights. Plaintiff alleges that these violations were caused by, <u>inter alia</u>, Kirkland's failure to properly administer prison regulations, and his failure to adequately train and supervise PBSP employees.

///

---

[1] Plaintiff does not specify the nature of this hearing.

[2] According to plaintiff, the six-year period starts to run on the last date prison officials receive information of an inmate's gang activity.

2

**DISCUSSION**

A. <u>Standard of Review</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. <u>See</u> 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. <u>See id</u>. at 1915A(b)(1),(2). <u>Pro se</u> pleadings must be liberally construed. <u>See</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

B. <u>Legal Claims</u>

    1. <u>Retaliation</u>

In his first cause of action, plaintiff alleges that the denial of his release from the SHU in 2004 was done in retaliation for his having filed administrative grievances. Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. <u>See</u> <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005). A prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. <u>See</u> <u>Pratt v. Rowland</u>, 65 F.3d

3

802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (holding allegation that actions were "arbitrary and capricious" sufficient to plead retaliation). The prisoner also must allege that the defendants' actions caused him some injury. Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

Here, plaintiff alleges he was kept in the SHU after his inactive review because he had filed administrative grievances, including grievances based both on the failure to conduct such a review in May 2004 and on the inadequacy of the July 2004 determination that petitioner was still an active gang member. Prisoners may not be retaliated against for exercising their right of access to the courts, which extends to established prison grievance procedures. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Thus, a prisoner may not be retaliated against for using such procedures. See Rhodes, 408 F.3d at 567; Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Accordingly, plaintiff's retaliation claim states a cognizable claim for relief.

2. Cruel and Unusual Punishment

In his second cause of action, plaintiff claims that his "misclassification" as an active gang member, which has led to his continued retention in the SHU on administrative segregation, amounts to cruel and unusual punishment. The misclassification of an inmate does not amount to cruel and unusual punishment in violation of the Eighth Amendment. See Hoptowit v. Ray, 682 F.2d 1237, 1255-56 (9th Cir. 1982); Ramos v. Lamm, 639 F.2d 559, 566-67 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). Nor does indefinite retention in administrative segregation implicate the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (finding indefinite administrative segregation is not cruel and unusual punishment). Accordingly, plaintiff's second cause of action does not state a cognizable claim for relief.

In his fourth cause of action, plaintiff claims that his "prolonged retention" in the SHU amounts to a violation of the Eighth Amendment because of the SHU's allegedly "inhumane" conditions of confinement. The Eighth Amendment, while not mandating comfortable

4

prisons, does not permit inhumane conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Accordingly, plaintiff's fourth cause of action, liberally construed, is cognizable.

### 3. Conspiracy

Relying on "all previous paragraphs," plaintiff, in his third cause of action, alleges that defendants Randolph, Castellaw and two Doe defendants conspired to violate his "constitutional rights (inactive status) as alleged herein, in violation of 42 U.S.C. Sections 1983 and 1985." To the extent plaintiff relies on § 1983, the conspiracy claim is cognizable only as to those causes of action found cognizable herein. With respect to § 1985, it is unclear whether plaintiff is endeavoring to set forth an independent rather than derivative claim. See, e.g., 42 U.S.C. § 1985(2) (providing cause of action for conspiracy to obstruct justice in federal courts or to intimidate party, witness, or juror in connection therewith); see also Kush v. Rutledge, 460 U.S. 719, 726-27 (1983) (discussing causes of action under § 1985). Because, at a minimum, plaintiff may be able to show concert of action in connection with the acts alleged in support of plaintiff's cognizable claims, the third cause of action, liberally construed, states a cognizable claim for relief.

### 4. Double Jeopardy

In his fifth cause of action, plaintiff claims the decision in October 2004 not to release him from the SHU, in combination with the initial decision to place him in the SHU in 1994, violates the Double Jeopardy Clause. The guarantee against double jeopardy protects against a second prosecution for the same offense after a prior acquittal or conviction, and against multiple punishments for the same offense. See Witte v. United States, 515 U.S. 389, 395-96 (1995); United States v. DiFrancesco, 449 U.S. 117, 129 (1980). These protections govern prosecutions and sentences carried out in state and federal court based on criminal charges. This Court is aware of no authority, and plaintiff cites none, for the proposition that the Double Jeopardy protections apply to administrative decisions by prison officials to segregate their inmates, or indeed that these protections apply in any context other than state or federal court. Accordingly, plaintiff's double jeopardy claim is not cognizable.

### 5. Due Process

In his sixth cause of action, plaintiff claims that defendants have violated his "state created liberty interest," an interest protected by the constitutional right to due process, by retaining him in the SHU on administrative segregation based on their continued classification of him as an active gang member. Changes in conditions of confinement may amount to a deprivation of a constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance," Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484. Indefinite placement in the SHU may amount to a deprivation of a liberty interest of real substance within the meaning of Sandin, i.e., an "atypical and significant hardship." See Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 (2005).

When prison officials determine that a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. See Toussaint v. McCarthy, 801 F.2d at 1100; see also Wilkinson, 125 S. Ct. at 2397 (determining prisoner constitutionally entitled only to informal, non-adversary procedures prior to assignment to "supermax" facility).

Due process also requires that an evidentiary basis exist for a prison official's decision to place an inmate in segregation for administrative reasons. See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal can be deduced. Id. at 1105. Additionally, it has been held that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); see also Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (noting results of polygraph examination may not be considered "unfailingly accurate" when used as evidence to support

1 placement in administrative segregation); <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987)
2 (holding evidence relied upon by prison disciplinary board must have "some indicia of
3 reliability").  Finally, prison officials must engage in some sort of periodic review of an
4 inmate's confinement in administrative segregation, <u>see</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 477
5 n.9 (1983); <u>Toussaint</u>, 801 F.2d at 1101, which review must amount to more than
6 "meaningless gestures."  <u>Toussaint v. Rowland</u>, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989)
7 (citing <u>Toussaint v. McCarthy</u>, 801 F.2d at 1102).

8 Here, plaintiff alleges the evidence relied upon by prison officials in determining he
9 was not eligible for release from the SHU in July 2004 and again in October 2004 was
10 neither sufficient nor reliable.  He alleges that defendants Randolph and Castellaw were
11 responsible for the erroneous decision in July 2004, and that two Doe defendants were
12 responsible for the erroneous decision in October 2004.  Plaintiff also claims he was not
13 provided all the procedures required by due process in connection with the decision to hold
14 him in the SHU indefinitely.  Liberally construed, these allegations state a cognizable claim
15 for the violation of a state created liberty interest protected by the federal right to due
16 process.

17 In his seventh cause of action, plaintiff alleges that his retention in the SHU in
18 administrative segregation violates "Federal Due Process."  The hardship associated with
19 administrative segregation, such as loss of recreational and rehabilitative programs or
20 confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due
21 Process Clause.  <u>See</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091-92 (9th Cir. 1986)
22 (applying <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983)), <u>cert. denied</u>, 481 U.S. 1069 (1987).  To the
23 extent plaintiff is claiming in his seventh cause of action that his retention in the SHU in
24 administrative segregation itself violates the federal Due Process Clause, such claim is not
25 cognizable.

26      6.    <u>State Law</u>

27 In his eighth cause of action, plaintiff asserts that by retaining him in the SHU in
28 administrative segregation based on an incorrect classification as an active gang member,

7

defendants have violated their "mandatory duties" under various provisions of the California Penal Code and Title 15 of the California Code of Regulations. Liberally construed, this cause of action states a cognizable claim for the violation of state law.

### 7. Supervisor Liability

In his ninth cause of action, plaintiff alleges that the "supervisory defendants" have failed to "lawfully administer, train and supervise," and that this violates their "duty to perform and execute their duties in a manner consistent with state and federal law." The Court liberally construes the term "supervisory defendants" to include Kirkland, Castellaw, and Randolph, based on their titles, as well as the Doe defendant identified as "John Doe/I.G.I.," based on the allegation that he is the "head" of the PBSP "gang unit."

A supervisor may be held liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). As this cause of action incorporates all "previous claims," it appears plaintiff is alleging that the failure by the "supervisory defendants" to adequately administer, supervise and train the named defendants caused the violations of federal and state law alleged in the prior eight causes of action. To the extent such claims have been found cognizable herein, this cause of action, liberally construed, states a cognizable claim against the "supervisory defendants."

## CONCLUSION

For the foregoing reasons:

1. Plaintiff's first cause of action (retaliation), third cause of action (conspiracy), fourth cause of action (cruel and unusual punishment), sixth cause of action (state created liberty interest), eighth cause of action (state law), and ninth cause of action (supervisor liability) are, liberally construed, cognizable. Plaintiff's second cause of action (cruel and unusual punishment), fifth cause of action (double jeopardy) and seventh cause of action (federal due process) are DISMISSED for failure to state a cognizable claim for relief.

2. As service has been completed in this matter, the Clerk need not issue

additional summons, and the Marshal need not effectuate further service. Moreover, as defendants have filed a dispositive motion, defendants need not file a further dispositive motion. A schedule for the parties to supplement their briefing on the submitted dispositive motion is set forth in the "Order Providing Plaintiff Notice Pursuant to Wyatt v. Terhune; Scheduling Supplemental Briefing" filed concurrently herewith.

3. All provisions of the Order of Partial Dismissal and of Service filed July 13, 2005, that are not inconsistent with this order remain in effect.

IT IS SO ORDERED.

DATED: August 4, 2006

_____
MAXINE M. CHESNEY
United States District Judge