IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY R. GARCIA, | No. C 05-0341 MMC (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING OTHER PENDING MOTIONS** |
| v. | |
| RIICHARD KIRKLAND, et al., | |
| Defendants. | **(Docket Nos. 18, 26, 28, 31, & 33)** |

On January 25, 2005, plaintiff, a California prisoner currently incarcerated at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983. On July 13, 2005, after reviewing the allegations in the complaint pursuant to 28 U.S.C. § 1915A(a), the Court issued an Order of Partial Dismissal and of Service. On November 21, 2005, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground that plaintiff had failed to exhaust administrative remedies. On December 2, 2005, plaintiff filed an opposition, attaching thereto a number of exhibits, and on December 15, 2005, defendants filed a reply. Thereafter, on December 30, 2005, plaintiff filed a "rebuttal" to the reply, and, on May 8, 2006, another opposition to the motion along with evidence in support thereof. Two weeks later, on May 20, 2006, plaintiff filed a motion for leave to file an amended complaint.

On August 4, 2006, the Court issued an Amended Order Of Partial Dismissal And Of Service.[1] Concurrently therewith, the Court issued a separate order providing plaintiff with notice pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir.), cert. denied, 540 U.S. 810 (2003), and scheduling supplemental briefing on defendants' motion to dismiss. On August 24, 2006, defendants filed a supplemental motion to dismiss; on September 14, 2006, plaintiff filed a supplemental opposition; and on September 21, 2006, defendants filed a supplemental reply.

**FACTUAL BACKGROUND**

In its Amended Order of Partial Dismissal and of Service, the Court summarized the facts alleged by plaintiff as follows:

> In 1994, while incarcerated at New Folsom State Prison, [plaintiff] was issued a form CDC-114 directing that he be placed in administrative segregation indefinitely because he had been identified by three different confidential informants as a member of the "Northern Structure" prison gang. As such, plaintiff's presence in the general prison population was deemed a threat to the institution. In October 1994, plaintiff was transferred to administrative segregation in the Secure Housing Unit ("SHU") at PBSP, where he has remained ever since.
> According to plaintiff, in May 2004, he was eligible for "inactive review," i.e., a review by prison officials of whether he had been inactive in a gang for six years, pursuant to prison regulations requiring his release from administrative segregation if he had not been active in a gang for a period of six years. Plaintiff did not receive inactive review in May 2004. The issue, however, was addressed thereafter at a hearing in July 2004,[2] at which plaintiff was informed he would not be eligible for inactive review until November 2007. This decision was based on the fact that defendant M. Randolph, Sergeant at PBSP and Institution Gang Investigator ("Randolph"), had found a memorandum indicating that on November 28, 2001, a confidential informant had informed prison authorities that plaintiff had been involved in gang activity.[3] Defendant M. Castellaw, Associate Warden ("Castellaw"), was present at the hearing and reviewed the memorandum.
> Plaintiff asked for, and received, a copy of the memorandum. He

---

[1] In the amended order, the Court found cognizable plaintiff's first cause of action (retaliation), third cause of action (conspiracy), fourth cause of action (cruel and unusual punishment), sixth cause of action (state created liberty interest), eighth cause of action (state law), and ninth cause of action (supervisor liability). Plaintiff's second cause of action (cruel and unusual punishment), fifth cause of action (double jeopardy), and seventh cause of action (federal due process) were dismissed for failure to state a cognizable claim for relief.

[2] Plaintiff does not specify the nature of this hearing.

[3] According to plaintiff, the six-year period starts to run on the last date prison officials receive information of an inmate's gang activity.

2

discovered that it did not indicate any new information regarding plaintiff's gang activity, but instead was simply an updated notation of the fact that plaintiff had previously been identified by a source in May 1998. When plaintiff complained to prison officials, defendant Richard Kirkland, Warden PBSP ("Kirkland"), agreed with plaintiff that he was eligible for inactive review. In October 2004, based on information found in the course of that review, plaintiff was denied inactive status. Specifically, investigators informed plaintiff that a gang "roster" had been found in the cell of a Northern Structure gang member, which document included plaintiff's name.

Plaintiff claims he has never been a gang member or engaged in gang activity. He claims his continued retention in the SHU is a violation of his constitutional rights. Plaintiff alleges that these violations were caused by, inter alia, Kirkland's failure to properly administer prison regulations, and his failure to adequately train and supervise PBSP employees. (See Amended Order of Partial Dismissal and of Service, filed August 4, 2006, at 12-2.)

## DISCUSSION

A.  Motion to Dismiss

    1.  Standard of Review

Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[4] If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. Id. at 1120.

    2.  Analysis

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

---

[4] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. Wyatt, 315 F.3d at 1120 n.14. Plaintiff was given such notice by the Court on August 4, 2006.

1  Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such
2  actions involve general conditions or particular episodes, whether they allege excessive force
3  or some other wrong, and even if they seek relief not available in grievance proceedings,
4  such as  money damages.  Porter v. Nussle, 122 S. Ct. 983, 988, 992 (2002).  Moreover, an
5  action must be dismissed unless the prisoner exhausted his available administrative remedies
6  before he filed suit, even if the prisoner fully exhausts while the suit is pending.  McKinney
7  v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

8       The State of California provides its prisoners and parolees the right to appeal
9  administratively "any departmental decision, action, condition or policy perceived by those
10 individuals as adversely affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In
11 order to exhaust available administrative remedies within this system, a prisoner must
12 proceed through several levels of appeal: (1) informal review, (2) first formal written appeal
13 on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or
14 designee, and (4) third formal level appeal to the Director of the California Department of
15 Corrections and Rehabilitation ("Director").  See Barry v Ratelle, 985 F. Supp 1235, 1237
16 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the
17 Director's level of review satisfies the exhaustion requirement under § 1997e(a).  See id. at
18 1237-38.

19      In support of the instant motion, defendants have filed a declaration by D. Bradbury,
20 ("Bradbury"), the Appeals Coordinator at PBSP, who reviews all administrative appeals filed
21 by PBSP inmates.  (Bradbury Decl. ¶ 1.)  Bradbury attests that he conducted a search of the
22 database containing records of all administrative appeals filed at the first and second formal
23 levels of review at PBSP between May 2004, when the alleged actions giving rise to the
24 present complaint commenced, specifically, the alleged failure to timely review plaintiff's
25 gang status for inactivity, and January 25, 2005, when plaintiff filed the complaint herein.
26 (Bradbury Decl. ¶¶ 3-6.)  Bradbury found that during this time period plaintiff had filed a
27 total of four administrative appeals at either the first or second formal level of review.
28 (Bradbury Decl. ¶ 6, Exs. B-E.)  Two of those appeals concern the handling of plaintiff's

4

mail, claims not raised in the instant action. (Bradbury Decl. Exs. C-D.) A third appeal concerns an incident in which a prison guard allegedly set up a fight between plaintiff and another inmate, an event upon which none of the claims in the present action is based. (Bradbury Decl. Ex. E.) Only one of the four appeals, Appeal No. PBSP-D-04-2356, addresses matters upon which claims raised herein are based, specifically, the assertion that plaintiff should have been placed on inactive gang status and released from the SHU.[5] (Bradbury Decl. ¶ 7, Ex. B.)

Additionally, defendants have filed a declaration by N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch at the California Department of Corrections and Rehabilitation, which reviews all appeals filed with the Director, the highest level of appeal available to California prisoners. (Grannis Decl. ¶¶ 1, 4). Grannis attests that a search of the database containing records of all administrative appeals filed with the Director between May 2004 and January 25, 2005, was conducted and that the search produced no record of any appeal filed by plaintiff during that time. (Id. at ¶¶ 5-7).

Plaintiff advances several arguments in support of his assertion that he has exhausted his claims. The Court addresses these arguments below.

      a.     Appeal No. PBSP-D-04-02356

Plaintiff argues he has exhausted his administrative remedies by pursuing Appeal No. PBSP-D-04-02356 to the second formal level of review.

On August 7, 2004, plaintiff filed Appeal No. PBSP-D-04-02356, seeking: (1) "in-active status review"; (2) that the 12-month "observation" period, which would follow his

---

[5]The alleged failure to place plaintiff on inactive gang status, and instead keep him in the SHU, forms the basis for plaintiff's first, third, sixth, eighth and ninth causes of action. The only other cause of action remaining herein, the fourth, claims the conditions of confinement in the SHU are "inhumane" and violate the Eighth Amendment. Plaintiff does not contend the claim raised in the fourth cause of action was ever raised in any of his administrative appeals, and none of the administrative appeals attached to the papers filed herein raise such claim. Consequently, it is clear that the fourth cause of action is not exhausted. Accordingly, the remainder of the discussion herein with respect to the issue of exhaustion is confined to a consideration of whether plaintiff's other claims, i.e., his claims concerning his alleged improper retention in the SHU on active gang status, have been exhausted.

5

release from the SHU into the General Population, be counted retroactively to May 2004; and (3) "a copy of [his] July 7th annual review hearing." (Bradbury Decl. Ex. B-0001). On October 18, 2004, the appeal was "partially granted" at the second level of review, specifically, PBSP staff were contacted and the Classification Committee scheduled a hearing to review whether plaintiff should be placed on inactive gang status. (Bradbury Decl. Ex. B-0016). According to plaintiff, such hearing was held on October 14, 2004,[6] following which PSBP officials conducted an investigation and, on November 9, 2004, denied plaintiff inactive gang status. (Complaint at 14; Pl.'s Supp. Opp. Exs. D, E.)

In the instant action, plaintiff does not seek a review of his inactive gang status, but rather seeks "release" from the SHU, expungement of any reference to being an active gang member from his record, and monetary damages. (Complaint at 45.)[7] Consequently, plaintiff did not receive, in connection with Appeal No. PBSP-D-04-02356, the relief he seeks herein.

Plaintiff's obligation to exhaust persists as long as some administrative remedy is available to him. See Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). Following the partial grant of Appeal No. PBSP D-04-02356 and subsequent denial of inactive gang status, administrative remedies remained available to plaintiff, by which he could request release from the SHU and the other relief he seeks in the instant action. Indeed, plaintiff concedes Appeal No. PBSP-D-04-02356 "only dealt with one issue (ie. requesting an inactive status review)," and that, after said appeal was partially granted and he was denied inactive gang status, he pursued new administrative appeals regarding the claims and relief sought herein. (Pl.'s "Rebuttal" at 5-6.)[8]

As plaintiff did not, in connection with Appeal No. PBSP-D-04-02356, obtain the relief he seeks herein, and administrative remedies remained available to him in which to

---

[6]Although the decision granting partial relief is dated October 18, 2004, PBSP staff were contacted before that date and the hearing was held in advance of October 18, 2004.

[7]Plaintiff additionally seeks declaratory and injunctive relief. (See Complaint at 43-44.)

[8]The subsequent appeals are discussed below.

1 pursue such relief, that appeal did not satisfy his obligation to exhaust his administrative
2 remedies.  As a result, plaintiff's obligation to continue to the Director's level was not
3 excused by his pursuit of Appeal No. PBSP-D-04-02356 to the second formal level of
4 review.

          b.      <u>Appeals Assertedly filed in November and December 2004</u>

6         Plaintiff asserts he filed, in November and December 2004, appeals concerning his
7 retention in the SHU on active gang status.  Specifically, according to plaintiff, on
8 November 8, 2004, he filed an appeal at the "informal level" of review regarding the above-
9 referenced decision to keep him in the SHU as an active gang member.  (Pl.'s Supp. Opp. at
10 5; Complaint Ex. I.)  Plaintiff states he did not receive a response to this complaint, and that
11 on November 27, 2004, he filed a new appeal "directly to the Appeals Coordinator's Office"
12 regarding the same issue.  (Pl.'s Supp. Opp. at 5; Complaint Ex. I.)  Plaintiff further states
13 that on December 1, 2004, he "made a formal inquiry to" the Institutional Gang Investigator
14 ("IGI") about his November 8, 2004 appeal, and was informed that no such appeal had been
15 received and that he should "try again."  (Pl.'s Supp. Opp. at 5; Complaint Ex. H.)
16 According to plaintiff, he submitted, on December 9, 2004, another appeal at the informal
17 level, again raising his retention in the SHU on active gang status.  (Pl.'s Supp. Opp. at 5;
18 Complaint Ex. H.).  On December 16, 2004, having received no response, he made a "formal
19 inquiry to" the Appeals Coordinator's Office about the appeal, and was advised there were
20 no records of such an appeal having been submitted.  (Pl.'s Supp. Opp. at 5; Pl.'s Opp. Ex.
21 B.)  Plaintiff states he then decided to "turn away from the appeal process" and to file the
22 instant action,[9] because of the time it would take to complete the "multistep" administrative
23 appeals process.  (Complaint, Mem. P. & A. at 2)

24         There is no evidence that any of the foregoing alleged appeals from November and
25 December 2004 were ever submitted to prison officials.  Defendants have provided

---

27     [9]Although, in his September 14, 2006 supplemental opposition, plaintiff states he filed
28 the instant action on "December 25, 2005," (Pl.'s Supp. Opp. at 6), he signed the complaint on January 3, 2005, and the Clerk of the Court filed it on January 25, 2005.

7

declarations that the prison data bases contain no record of any such appeals, and plaintiff has not submitted a declaration attesting, or any other evidence demonstrating, that he submitted them to prison officials.[10] Rather, plaintiff cites Exhibits H and I to the Complaint.

Exhibit H consists of plaintiff's December 1, 2004 inquiry to the IGI about his asserted November 8, 2004 appeal, in which the IGI official states no such appeal was received. (Complaint Ex. H.) If anything, this exhibit indicates the appeal was not submitted. Exhibit H also includes what plaintiff identifies as a "handwritten copy" of an appeal to the informal level, dated December 9, 2004. (Id.) Unlike the administrative appeals that have been acknowledged herein as having been received by prison officials, this document contains no stamp or signature by a prison official indicating receipt thereof. (Id.) Exhibit I consists of a log, handwritten by plaintiff and containing various entries regarding administrative appeals, including an entry as to a November 8, 2004 appeal at the "informal level" and an entry as to a November 27, 2004 appeal "directly to the appeals coordinator." (Complaint Ex. I.) There is no declaration attesting to the purported facts contained therein, however. In sum, there is no evidence to support a finding that the appeals plaintiff alleges he filed at the informal and first formal levels of review in November and December 2004 were in fact ever submitted to prison officials, let alone that such appeals were denied. In the absence of any such evidence, and in light of defendants' evidence that no such appeals were ever filed, these alleged appeals cannot be found to have exhausted plaintiff's claims.

Moreover, even if there were evidence that plaintiff had, as he alleges, in fact submitted the above-described appeals in November and December 2004, plaintiff concedes he did not pursue them to the highest, i.e., Director's, level of review, but instead decided to "turn away from the appeal process" because of the time involved in pursuing an appeal at every level of review available to California inmates. (Complaint, Mem. P. & A. at 2.) The PLRA's exhaustion requirement cannot be avoided simply because a litigant does not want to

---

[10]Neither the Complaint, nor any of plaintiff's opposition papers, in which the alleged November and December 2004 appeals are described, are verified or signed under penalty of perjury.

8

take the time to pursue all available administrative remedies.  Further, to the extent plaintiff may be arguing an exception to the exhaustion requirement exists by reason of the asserted failure to respond to his appeals in November and December 2004, such argument is unavailing.  Plaintiff cites no authority, and the Court is aware of none, for the proposition that such alleged lack of response either rendered an appeal at the higher levels of review "unavailable" within the meaning of the PLRA, or that plaintiff's obligation to fully exhaust his remedies was otherwise excused.  In the absence of such authority, and in light of the Supreme Court's admonition that courts "not read futility or other exceptions into statutory exhaustion requirements," see Booth, 532 U.S. at 741 n.6, this Court finds no such exception to the requirement to exhaust is applicable herein, even if the submission of the above-referenced appeals could be proven.

        c.      Appeal No. PBSP-D-05-00004

Plaintiff argues he has satisfied the exhaustion requirement by filing, on December 20, 2004, Appeal No. PBSP-D-05-00004.[11]  That appeal does not concern the claims raised herein, however, but instead raises an unrelated incident in which a prison guard, not one of the defendants to this action, allegedly "manipulated an assault" between plaintiff and another inmate on December 20, 2004.  (Bradbury Decl. Ex. E.)  Moreover, the appeal was not filed at the Director's level of review until June 2005, well after the instant action had been filed, (see id.), and, consequently, does not satisfy the exhaustion requirement, see McKinney, 311 F.3d at 1199.

        d.      June 27, 2005 Appeal[12]

Plaintiff argues he has satisfied the exhaustion requirement because he subsequently filed an appeal, on June 27, 2005, regarding the failure to place him on inactive gang status.  (Pl.'s Opp. Ex. C.)  Because that appeal was filed after the commencement of the instant

---

[11] The appeal is one of the four appeals listed in and attached to the Bradbury declaration. (See Bradbury Decl. Ex. E.)

[12] The documents provided with respect to the June 27, 2005 appeal do not bear an appeal number.

9

lawsuit, however, it does not satisfy the exhaustion requirement. See McKinney, 311 F.3d at 1199.

      e.  Appeal No. PBSP-D-05-02974

Finally, in his second "opposition," filed May 8, 2006, plaintiff includes another administrative appeal, Appeal No. PBSP-D-05-02974. That appeal raises plaintiff's alleged placement and retention in the SHU on active gang status, and was pursued through the Director's level. Appeal No. PBSP-D-05-02974 was commenced at the informal level in November 2005, however, and was not completed until April 2006, long after the instant action was filed. (Pl.'s Opp., filed May 8, 2006, Ex. A) As discussed above, the PLRA requires a prisoner to exhaust his administrative remedies before filing his claims in federal court. See McKinney, 311 F.3d at 1199. Consequently, Appeal No. BBSP-D-05-02974 does not serve to satisfy the exhaustion requirement in this case.

In sum, plaintiff, prior to filing the instant action, did not pursue the claims raised herein through the Director's level of review, the highest level of administrative review available to him. As a consequence, the complaint is not exhausted, and will be dismissed without prejudice. See Wyatt, 315 F.3d at 1119-20 (holding where court finds lack of exhaustion, proper remedy is dismissal without prejudice).

B. Motion for leave to amend

Plaintiff has filed a motion for leave to amend his complaint to substitute the names of defendants previously identified as "Doe" defendants. The claims in plaintiff's proposed amended complaint are the same as the claims raised in the original complaint. For the reasons discussed above, such claims cannot proceed in the instant action due to plaintiff's failure to exhaust them. As the proposed amendment would not cure that deficiency, leave to amend is not warranted. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994) (holding leave to amend need not be granted where amendment would constitute exercise in futility).

///

///

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the complaint is hereby GRANTED, and the above-titled action is hereby DISMISSED without prejudice to plaintiff's refiling his claims after all available administrative remedies have been exhausted; the motion to amend the complaint is DENIED.

In light of the Court's ruling on defendants' motion to dismiss, defendants' motion to stay discovery pending ruling on said motion is hereby DENIED as moot, and plaintiff's "Motion Demanding Case To Be Heard And/Or For Change of Venue" likewise is DENIED as moot.

This order terminates Docket Nos. 18, 26, 28, 31, and 33, as well as any other pending motions.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: December 7, 2006

_____
MAXINE M. CHESNEY
United States District Judge